IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


EDWARD O'CONNELL,                 )
                                  )
          Plaintiff               )
                                  )          Civil Action
     v.                           )          No. 12-cv-02540
                                  )
ASSOCIATED WHOLESALERS, INC.,     )
                                  )
          Defendant               )

                         *     *     *


APPREARANCES

          JEFFREY R. ELLIOT, ESQUIRE
               On Behalf of Plaintiff

          JOHN R. MARTIN, ESQUIRE
          TODD J. SHILL, ESQUIRE
               On Behalf of Defendant

                         *     *     *


                  **O P I N I O N**

JAMES KNOLL GARDNER
United States District Judge

          This matter is before the court on Defendant's Motion

for Summary Judgment ("Motion").[1]  For the reasons expressed

---

[1]          The Motion was filed by defendant on April 5, 2013 (Document 20),
together with Defendant's Statement of Undisputed Facts (Document 21);
Exhibits A through L to the Motion (Documents 21-1 through 21-12, respec-
tively); and Defendant's Brief in Support of Summary Judgment (April 5, 2013)
(Document 22)("Defendant's Brief").

          On April 15, 2013, the Reply of Plaintiff, Edward J. O'Connell,
in Opposition to Motion for Summary Judgment of Defendant, Associated

                                        (Footnote 1 continued):

below, I grant the Motion, and enter judgment in favor of
defendant Associated Wholesalers, Inc. and against plaintiff
Edward O'Connell on plaintiff's Complaint.

### SUMMARY OF DECISION

This is an employment discrimination case in which
plaintiff Edward O'Connell alleges that his employment as
Director of Procurement and Private Brands with defendant
Associated Wholesalers, Inc. ("AWI") was terminated in violation
of the Age Discrimination in Employment Act ("ADEA"),[2] and the
Pennsylvania Human Relations Act ("PHRA").[3]

For the reasons expressed below, I grant Defendant's
Motion for Summary Judgment. Specifically, I grant the Motion
because plaintiff does not establish a prima facie case of age
discrimination and, alternatively, because the undisputed
material facts would not permit a reasonable factfinder to
conclude that defendant's proffered rationale for laying off
plaintiff was mere pretext.

---

(Continuation of footnote 1):

Wholesalers, Inc. (Document 23)("Plaintiff's Reply in Opposition"), was
filed, together with Exhibits A through D to Plaintiff's Reply in Opposition
(Documents 23-2 through 23-8); and Brief of Plaintiff, Edward J. O'Connell,
in Opposition to Motion for Summary Judgment of Defendant, Associated
Wholesalers, Inc. (Document 23-9)("Plaintiff's Brief").

Defendant's Reply Brief in Further Support of Summary Judgment
was filed April 19, 2013 (Document 26)("Defendant's Reply Brief").

[2]      29 U.S.C. §§ 621-634.

[3]      Act of October 27, 1955, P.L. 744, No. 222, §§ 1-13, as amended,
43 P.S. §§ 951-963.

## JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331. Specifically, plaintiff claims, in part, that defendant employer committed age discrimination by terminating plaintiff's employment in violation of the federal Age Discrimination in Employment Act. This court has supplemental jurisdiction over plaintiff's pendent state-law claims. See 28 U.S.C. § 1367.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims occurred in Berks County, Pennsylvania, which is located within this judicial district.

## PROCEDURAL HISTORY

Plaintiff commenced the within action on May 9, 2012 by filing his Complaint. Defendant filed its Answer with Affirmative Defenses on July 6, 2012.

Following the completion of discovery, Defendant's Motion for Summary Judgment and supporting documents were filed on April 5, 2013. As required by my Rule 16 Status Conference

Order filed January 7, 2013,[4] Defendant's Statement of Undisputed

Facts was among the supporting documents filed together with its

Motion.

Plaintiff's Reply in Opposition and supporting

documents were filed on April 15, 2013.  However, plaintiff did

not, as also required by my Rule 16 Status Conference Order,[5]

file a separate concise statement of facts in response to

Defendant's Statement of Undisputed Facts.

---

[4]       The Rule 16 Status Conference Order filed January 7, 2013
(Document 15) provides, in pertinent part, that

> any party filing a motion for summary judgment or partial summary
> judgment shall file and serve, in addition to a brief, a separate
> short concise statement, in numbered paragraphs, of the material
> facts about which the moving party contends there is no genuine
> dispute.  The moving party shall support each such material fact
> with specific citations to the record, and, where practicable,
> attach copies of the relevant portions of the record.  *Failure to
> submit such a statement may constitute grounds for denial of the
> motion.*

(Id. at page 3 (emphasis added).)

[5]       Pertinent to plaintiff, as the nonmoving party opposing a motion
for summary judgment, page 3 of the Rule 16 Status Conference Order states
that

> any party opposing a motion for summary judgment or partial
> summary judgment shall file and serve, in addition to a brief, a
> separate short concise statement, responding in numbered
> paragraphs to the moving party's statement of the material facts
> about which the opposing party contends there is a genuine
> dispute, with specific citations to the record, and, where
> practicable, attach copies of the relevant portions of the
> record.  *All factual assertions set forth in the moving party's
> statement shall be deemed admitted unless specifically denied by
> the opposing party in the manner set forth in this paragraph.*

(Id. at page 3 (emphasis added).)

Defendant's Reply Brief was filed, with leave of
court, on April 19, 2013.[6]

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure
permits a party to seek summary judgment with respect to a claim
or defense, or part of a claim or defense.  Rule 56(a) provides,
in pertinent part, that "[t]he court shall grant summary
judgment if the movant shows that there is no genuine dispute as
to any material fact and the movant is entitled to judgment as a
matter of law."  Fed.R.Civ.P. 56(a); National Association for
the Advancement of Colored People "NAACP" v. North Hudson
Regional Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2012).

For a fact to be considered material, it "must have
the potential to alter the outcome of the case."  Id. (citing
Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)).
Disputes concerning facts which are irrelevant or unnecessary do
not preclude the district court from granting summary judgment.
Id.

---

[6]     The first statement of argument in Defendant's Reply Brief reads:
"AWI's Statement of Undisputed Facts Should be Adopted." (Defendant's Reply
Brief at page 1.)  Defendant's Reply Brief then refers to the above language
from the Rule 16 Status Conference Order as well as prior Opinions of this
court in which facts asserted by defendants in a separate concise statement
of material facts were deemed admitted because plaintiff failed to properly
respond to the separate statement of material facts. (See Plaintiff's Brief
at pages 1-2.)

        Nonetheless, plaintiff did not seek leave to file a surreply
brief to explain why this court should not deem admitted the facts contained
in Defendant's Statement of Undisputed Facts, nor did plaintiff seek leave to
file out of time his responsive statement of facts.

Where a party asserts that a particular fact is, or cannot be, genuinely disputed, the party must provide support for its assertion. Fed.R.Civ.P. 56(c)(1). Rule 56(c)(1) provides that party may support its factual assertions by

> (A) citing particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

When considering a motion for summary judgment, the district court must view the facts and record evidence presented "in the light most favorable to the non[-]moving party." North Hudson, 665 F.3d at 475 (quoting Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

If the moving party shows that there is no genuine issue of fact for trial, "the non-moving party then bears the burden of identifying evidence that creates a genuine dispute regarding material facts." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Where a defendant seeks summary judgment, the plaintiff cannot avert summary judgment with speculation, or by resting on the allegations in his pleadings, but rather he must

present competent evidence from which a jury could reasonably find in his favor. <u>Ridgewood Board of Education v. N.E. for M.E.</u>, 172 F.3d 238, 252 (3d Cir 1999); <u>Woods v. Bentsen</u>, 889 F.Supp. 179, 184 (E.D.Pa. 1995)(Reed, J.).

"Ultimately, [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Id.</u> (quoting <u>Matsushita Electric Industries Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (internal quotations omitted and alteration in original).

## **FACTS**

Upon consideration of the pleadings, record papers, exhibits, affidavits, and depositions, and drawing all reasonable inferences in favor of plaintiff, as required by the forgoing standard of review, and further based upon Defendant's Statement of Undisputed Facts, to which the plaintiff did not respond,[7] the pertinent facts are as follows.

---

[7]    In this case, as described in the above Procedural History section, defendants filed a separate concise statement of material facts in support of its motion. However, plaintiff did not file a concise statement in opposition to defendants' concise statement in the manner set forth in the Rule 16 Status Conference Order. Accordingly, the factual assertions set forth in Defendant's Statement of Undisputed Facts are deemed admitted. <u>See</u> <u>Higgins v. Hospital Central Services, Inc.</u>, 2004 U.S.Dist. LEXIS 24907, at *5-6 (E.D.Pa. December 9, 2004)(Gardner, J.); <u>Kelvin Cryosystems, Inc. v. Lightnin</u>, 2004 U.S.Dist. LEXIS 23298, at * (E.D.Pa. November 15, 2004)(Gardner, J.).

I consider my requirement for a concise statement and a responsive concise statement to be consistent with Federal Rule of Civil

(<u>Footnote 7 continued</u>):

Defendant Associated Wholesalers, Inc. ("AWI") is a cooperative wholesale distributor of food and grocery-related products and conducts business in the Commonwealth of Pennsylvania and surrounding states.[8]

Plaintiff Edward O'Connell was born November 1, 1951.[9] He began working for AWI in January 1996, at age 44, as the Director of Category Management.[10]  In that position, plaintiff was responsible for ensuring appropriate service levels and profits, as well as managing the staff, in the dairy, frozen food, grocery, and health/beauty/cosmetics departments of

---

(Continuation of footnote 7):

Procedure 56.  In addition, Rule 83(b) of the Federal Rules of Civil Procedure provides:

> A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and local rules of the district.  No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or local district rules *unless the alleged violator has been furnished in the particular case with actual notice of the requirement*.

Fed.R.Civ.P. 83(b)(emphasis added).

Thus, even if my requirement for a separate concise statement is not consistent with Rule 56, I gave plaintiff actual notice of my requirement in the Rule 16 Status Conference Order, and it clearly was not complied with. Accordingly, I deem the facts contained in Defendant's Statement of Undisputed Facts to be admitted.

[8]     Defendant's Statement of Undisputed Facts at ¶ 2.

[9]     Complaint at ¶ 7; Answer with Affirmative Defenses at ¶ 7.

[10]     Defendant's Statement of Undisputed Facts at ¶ 1.

defendant, known as "center store".[11]  Plaintiff held that
position until April 2008.[12]

In April 2008 the President of AWI, Bernie Ellis, made
structural changes within the company, and the Director of
Category Management position was eliminated.  Plaintiff, then
age 56, was transferred to a new position, Director of
Procurement and Private Brands.  Plaintiff's transfer to this
position was not a promotion and did not involve an increase in
plaintiff's compensation.[13]  Plaintiff held the position of
Director of Procurement and Private Brands from April 2008 until
his employment with AWI was terminated on July 19, 2010, when
plaintiff was 58 years old.[14]

As Director of Procurement and Private Brands,
plaintiff's duties included directing the efforts of the
replenishment buying team; and insuring that budgeted service
levels, warehouse inventory objectives, and vendor-sponsored
logistics incentives were achieved.[15]

---

[11]     Plaintiff's Reply in Opposition, Exhibit A (Document 23-2),
Transcript of Deposition of Edward O'Connell taken February 19, 2013
("O'Connell Deposition"), at pages 15-16.

[12]     Defendant's Statement of Undisputed Facts at ¶¶ 3-4 and 7.

[13]     Id. at ¶¶ 4-5.

[14]     Id. at ¶ 7.

[15]     Id. at ¶ 6.

During his tenure as Director of Procurement and Private Brands, plaintiff's direct supervisor was AWI's Director of Center Store, Wilford B. ("Bill") Donovan, III. Mr. Donovan was born July 22, 1956 -- less than five years after plaintiff (November 1, 1951). Plaintiff's second-level supervisor was AWI's President, Bernie Ellis.[16] Mr. Ellis reported to Christopher Michael, Chief Executive Officer of AWI.[17]

### Relationship with Bill Donovan

Plaintiff got along well with Mr. Donovan prior to their supervisor/subordinate relationship which commenced when plaintiff became Director of Procurement and Private Brands in April 2008.[18] Shortly after their professional relationship changed, Mr. Donovan became "overly critical" of plaintiff and "seemed to be nitpicking a lot."[19]

Plaintiff got the impression that there was a lot of friction within the Center Store division after he began to be supervised by Mr. Donovan.[20]

---

[16]     Defendant's Statement of Undisputed Facts at ¶ 8; see Plaintiff's Reply in Opposition, Exhibit B (Exhibit 23-3), Transcript of Deposition of Wilford B. Donovan, III taken March 26, 2013 ("Donovan Deposition"), at page 9.

[17]     Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition, at page 21-22.

[18]     Defendant's Statement of Undisputed Facts at ¶¶ 22-23.

[19]     Id. at ¶ 23.

[20]     Id. at ¶ 24.

In April 2009 Mr. Donovan told plaintiff that plaintiff and plaintiff's customers did not have a "sense of urgency" about the replenishment of certain products.[21]  When plaintiff disagreed with that assessment, Mr. Donovan replied to plaintiff, "[Y]ou're not going to be around much longer to fix this."[22]

On May 8, 2009 plaintiff received a Performance Improvement Plan/Last and Final Warning based upon an altercation plaintiff had with another AWI employee.[23]  Neither party suggests that this altercation was the cause of plaintiff's termination more than a year later.

During a meeting with plaintiff in January 2010, Mr. Donovan asked plaintiff when plaintiff planned to retire. The question came "out of the blue".  This was the only instance when Mr. Donovan asked plaintiff about his plans for retirement.[24]

In April 2010, with respect to a special project that plaintiff was involved with for AWI, Mr. Donovan said to

---

[21]        Defendant's Statement of Undisputed Facts at ¶ 26a.

[22]        Id. at ¶ 26a (alteration in original).

[23]        Id. at ¶ 26b.

[24]        Id. at ¶ 26c.

plaintiff, "Your ass is hanging out there on this one, I mean it."[25]

Mr. Ellis, President of AWI and plaintiff's second-level supervisor, did not make any statements or comments that plaintiff believed to be discriminatory on the basis of plaintiff's age.

## Training of Dennis Kreitz

Dennis Kreitz was hired on January 11, 2010 as a Category Manager in AWI's Center Store division to replace Tony Coladonato,[26] who had resigned from that position in "October [or] November of 2009".[27]

There were eleven Category Managers in AWI's Center Store division who are distinguished by the product lines (the category of products) for which they are responsible. Mr. Kreitz was responsible for snacks and beverages.[28]

---

[25]     Defendant's Statement of Undisputed Facts at ¶ 26d.

[26]     See Plaintiff's Reply in Opposition, Exhibit A, Transcript of Deposition of Edward O'Connell taken February 19, 2013 ("O'Connell Deposition"), at pages 76; see also Defendant's Statement of Undisputed Facts at page 12 n.3.

[27]     Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition at page 64; see Plaintiff's Reply in Opposition, Exhibit C (Document 23-4 through 23-7, collectively), Transcript of Deposition of Audrey Schein taken March 19, 2013 ("Schein Deposition"), at page 46.

[28]     Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition, at page 39.

Mr. Kreitz was in his thirties at the time he was hired.[29] Mr. Kreitz salary was $65,000 per year. At that time, plaintiff was earning "substantially more than that" -- $95,000 per year.[30]

For approximately three months following Mr. Coladonato's resignation -- but prior to the hiring of Mr. Kreitz -- plaintiff assumed the duties of Category Manager with respect to some of the product lines for which Mr. Coladonato had been responsible: soda, water, snacks, bottled juice, and aseptic juice products.[31] When Mr. Donovan assigned those duties to plaintiff, plaintiff was under the impression that the reassignment of those duties was permanent.[32]

Plaintiff was responsible for some (but not all) of the product lines previously handled by Mr. Coladonato prior to the hiring of Mr. Kreitz.[33]

---

[29]     Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition, at pages 36-37.

[30]     Plaintiff's Reply in Opposition, Exhibit C, Schein Deposition at page 22; Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition, at page 104.

[31]     See Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition, Exhibit Donovan 3; see also Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition, at page 76; Defendant's Statement of Undisputed Facts at page 12 n.3.

[32]     See Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition, at pages 75-76.

[33]     Id. at pages 76.

From the time that Mr. Kreitz was hired as Category Manager until plaintiff's termination on July 19, 2010, plaintiff trained Mr. Kreitz on the responsibilities of a Category Manager.[34]

At the time that plaintiff's employment was terminated, "[e]verything Dennis Kreitz was responsible for...came off [plaintiff's] desk." Upon termination of plaintiff's employment, Mr. Kreitz assumed responsibility for the category management duties that plaintiff had been performing.[35]

## Robesonia, Pennsylvania Facility

### *Hiring and Firing Overall*

Forty-three employees were hired at AWI's Robesonia, Pennsylvania facility from July 2009 through December 2010. Seventy-five employees were fired or resigned during that time period.[36]

At the time those forty-three employees were hired, one employee was eighteen years old, seventeen employees were in their twenties, eight employees were in their thirties, nine

---

[34]    See Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition, at pages 76; see also Defendant's Statement of Undisputed Facts at page 12 n.3.

[35]    Defendant's Statement of Undisputed Facts at ¶ 34.

[36]    Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition, at Exhibit Donovan 3 and Exhibit Donovan 5.

employees were in their forties, and eight employees were in their fifties.[37]

In other words, as many employees in their forties and fifties (seventeen out of forty-three, together) were hired as were employees in their twenties.  Twenty-one percent of the employees hired were in their forties; and nineteen percent of the employees hired were in their fifties (the age range plaintiff occupied -- age 58 -- at the time of his termination).

Forty-five of the seventy-five employees whose employment with AWI ended between July 2009, and December 2010 were age forty or above.  Thirty of the seventy-five employees whose employment with AWI ended between July 2009 and December 2010 were under the age of forty.

In other words, during that period of time, sixty percent of the employees whose employment ended were age forty or above, and forty percent of the employees whose employment ended during that period were under the age of forty.[38]

---

[37]        See Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition, at Exhibit Donovan 3.

[38]        See Id. at Exhibit Donovan 5.

### *Hiring by Mr. Donovan*

Mr. Donovan hired three management-level employees in the Center Store division between July 2009 and December 2010.[39]

On January 11, 2010 Mr. Donovan hired two individuals, Linden J. Cole and Dennis N. Kreitz II, as Category Managers in the Center store division.  Mr. Cole was born March 14, 1975 and was age 34 when he was hired.  Mr. Kreitz was born November 6, 1973 and was age 36 when he was hired.[40]

On May 17, 2010 Mr. Donovan hired Thomas A. Laria as Director of Field Operation in the Center Store division. Mr. Laria was born October 9, 1969 and was age forty when he was hired.[41]

The oldest of the three management-level employees hired by Mr. Donovan before plaintiff was laid off, Mr. Laria, was nearly eighteen years younger than plaintiff.  Mr. Cole and Mr. Kreitz (the two Category Managers hired by Mr. Donovan) were each more than twenty years younger than plaintiff.

On August 30, 2010, approximately one month after plaintiff's position was eliminated and his employment with AWI terminated, Mr. Donovan hired Sheila K. Houtz as an Account

---

[39]     Plaintiff's Reply in Opposition, Exhibit C, Schein Deposition, at pages 27-28.

[40]     Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition, at pages 70 and 80-94, and Exhibit Donovan 3, at page 1.

[41]     Id.

Assistant in the Center Store division.  Ms. Houtz was born

June 18, 1965 and was age 45 when she was hired.[42]  She was

thirteen years younger than plaintiff.

### **Industry Downturn and Cost-Cutting Directive**

The retail grocery industry suffered economic losses

as the result of the recession which was ongoing during

plaintiff's tenure as Director of Procurement and Private

Brands.[43]  In the spring of 2010, it became apparent that AWI

needed to restructure its business operations to achieve cost

savings and to realign itself to better meet the needs of its

retail grocery store customers.[44]

In April or May of 2010[45] the executive leadership of

AWI directed the company's division vice presidents and

directors to develop a plan to cut five percent of the budget

allotted for each division.

Each vice president and director reviewed his or her

respective department or division and developed criteria for

determining the parameters of the restructuring of his or her

---

[42]     Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition,
at pages 70 and 80-94, and Exhibit Donovan 3, at page 1.

[43]     Defendant's Statement of Undisputed Facts at ¶ 12.

[44]     Id. at ¶ 12.

[45]     Plaintiff's Reply in Opposition, Exhibit C, Schein Deposition, at
page 44.

division.[46] Each division head was required to justify any personnel cuts he or she made.[47]

Although AWI's vice presidents and directors realigned position duties within their divisions, and despite the increased efficiencies produced by the realignments, personnel cuts were made in the following divisions and departments: Center Store (where plaintiff was employed), the Distribution Center, Finance and Administration, Human Resources, the Meat Department, and Retail Development.[48]

Plaintiff's supervisor, Mr. Donovan, is the Vice President of AWI's Center Store division.[49] Employee labor costs are the primary expense in AWI's Center Store operation.[50]

Mr. Donovan, as the head of the division, reviewed the structure of Center Store and concluded that redundant and conflicting layers of authority existed within Center Store.[51] Specifically, Mr. Donovan found that while Category Managers within the division were responsible for company objectives related to the products, "private label management" and the

---

[46]    Defendant's Statement of Undisputed Facts at ¶ 12; Plaintiff's Reply in Opposition, Exhibit C Schein Deposition, at page 24.

[47]    Defendant's Statement of Undisputed Facts at ¶ 13.

[48]    Id. at ¶ 13.

[49]    Id. at ¶ 12.

[50]    Plaintiff's Reply in Opposition, Exhibit C, Schein Deposition, at page 24.

[51]    Defendant's Statement of Undisputed Facts at ¶ 14.

DeJarnett Account Manager (a woman named Jeanne Lowe) were both responsible for development, maintenance, and communication of programs, which created a lack of cohesion and accountability. [52]

For these reasons, Mr. Donovan concluded that eliminating the position of Director of Procurement and Private Brands eliminated the cohesion and accountability problems.[53]

Moreover, DeJarnett is AWI's private label broker. Ms. Lowe provides services to AWI but works for, and is paid by, DeJarnett. Ms. Lowe provides account management services to AWI concerning its private label broker, DeJarnett, at no cost to AWI.[54]

The Director of Private Brands is required to, among other things, oversee the replenishment of goods as they are depleted. Demand in this area was static and, as result, Mr. Donovan concluded that there was no need for redundant management oversight in that area.[55]

---

[52]    Defendant's Statement of Undisputed Facts at ¶ 14.

[53]    Id. at ¶ 14.

[54]    Id. at ¶ 15.

        Indeed, plaintiff testified that he worked closely with Ms. Lowe. He confirmed that she was not an AWI employee, but rather worked for DeJarnett as an Account Manager. (Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition, at pages 21-22.) Ms. Lowe, in turn had eight category-specific sales representatives working for her who were also DeJarnett employees. (Id.)

[55]    Defendant's Statement of Undisputed Facts at ¶ 16.

Based upon these considerations and his review of the Center Store division, Mr. Donovan chose to eliminate the position of Director of Procurement and Private Brands. As a result, plaintiff's employment with AWI was terminated on July 19, 2010.[56]

On the day that plaintiff's employment was terminated, he was called into Mr. Donovan's office, where Mr. Donovan and a manager from Human Resources named Heather Savant were present. Plaintiff was asked to close the door. He sat down and was handed a letter dated July 19, 2010 from Mr. Donovan which stated that the position of Director of Procurement and Private Brands "is being eliminated and your employment...is being terminated."[57] Plaintiff was "blindsided" by this development and did not say anything at the time of his termination.[58]

Plaintiff was told that his termination was not based upon any performance issue.[59] Indeed, plaintiff received two

---

[56]    Defendant's Statement of Undisputed Facts at ¶ 10.

[57]    Defendant's Statement of Undisputed Facts, Exhibit F, copy of one-page letter dated July 19, 2010 from Bill Donovan, Vice President, Center Store, to plaintiff; Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition at page 71; see Plaintiff' Reply in Opposition, Exhibit C, Schein Deposition, at page 43 and 46 (identifying Heather Savant as an "HR Manager" who was present when plaintiff's employment was terminated).

[58]    Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition at page 71.

[59]    Defendant's Statement of Undisputed Facts, Exhibit F, copy of one-page letter dated July 19, 2010 from Bill Donovan, Vice President, Center Store, to plaintiff; Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition at page 71; Plaintiff's Reply in Opposition, Exhibit C, Schein Deposition, at page 32.

weeks of "notice severance" and fourteen weeks of "severance payments", amounting to approximately $25,000 after taxes.[60] Nonetheless, no thought was given to transferring plaintiff to another position with AWI at a reduced salary.[61]

Specifically, despite the fact that plaintiff had more experience in the grocery industry than Mr. Kreitz and was training Mr. Kreitz on how to perform a Category Manager's duties, defendant did not consider letting Mr. Kreitz go and reassigning plaintiff, at a reduced salary, to the Category Manager position which Mr. Kreitz had recently come to occupy.[62]

Following plaintiff's termination, Mr. Kreitz voluntarily left his Category Manager position with AWI to take a job with Acme Markets, his former employer.[63] Carol Cherington was hired to fill Mr. Kreitz's position. When Ms. Cherington left AWI sometime during 2012, the Category Manager position once held by Mr. Kreitz was filled by David Vosteen. Both Ms. Cherington and Mr. Vosteen are in their fifties.

---

[60] Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition, at pages 106-106.

[61] Plaintiff's Reply in Opposition, Exhibit C, Schein Deposition, at page 26.

[62] Id. at pages 21-22 and 29; see Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition at pages 65-67.

[63] Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition, at pages 35-36 and 108.

## <u>Other Center Store Employees</u>

Plaintiff was not the only employee in AWI's Center Store division laid off following the spring 2010 cost-cutting directive from AWI's executive leadership.[64]

Mr. Donovan concluded that one Replenishment Buyer position and one Merchandiser position could be eliminated from the Center Store division as well.[65] Mr. Donovan selected the Replenishment Buyer and the Merchandizer to be laid off based upon seniority: the Replenishment Buyer and the Merchandizer with the <u>least</u> seniority were each laid off.[66]

Jen Rhoads was the Replenishment Buyer laid off by Mr. Donovan. Ms. Rhoads was born May 25, 1971 (age 39 in 2010) and had three years seniority in her position. Both Replenishment Buyers retained by Mr. Donovan in Center Store were older and had more seniority than Ms. Rhoads: one was born November 22, 1949 (before plaintiff was born) and had eleven years of seniority; the other was born May 17, 1967 and had five years seniority.[67]

David Stoddard was the Merchandizer laid off by Mr. Donovan. Mr. Stoddard was born January 17, 1955 (age 55 in

---

[64]      Defendant's Statement of Undisputed Facts at ¶ 18.

[65]      <u>Id.</u> at ¶¶ 19-20.

[66]      <u>Id.</u> at ¶¶ 19-20.

[67]      <u>Id.</u> at ¶ 19.

2010).  Mr. Stoddard had worked for AWI as a Merchandizer since August 18, 2010, and had approximately two years seniority.  The Merchandizers retained in Center Store had between four and thirty-eight years seniority and were between 51 and 72 years of age.[68]

Donna Moyer was the only person who held the position of Plan-O-Gram Analyst in the Center Store division.  Ms. Moyer was born February 12, 1958 (age 52 in 2010).  Mr. Donovan concluded that Ms. Moyers's duties as the Plan-O-Gram Analyst could be outsourced to DeJarnett, thereby eliminating the need for AWI to staff that position.  Ms. Moyer was laid off by AWI, but was then hired by DeJarnett.[69]

### Other AWI Employees

At least seventeen AWI employees were laid off around the time that plaintiff's employment was terminated in July, 2010.[70]  Among the employees whose employment was terminated at that time were the following:  Glen Fornoff, Lori Hartzel, and Janet Horacle.  Mr. Fornoff (in his mid-fifties) was the Director of the HMR Deli department and reported to Mr. Ellis.  Ms. Hartzel (in her late-fifties) and Ms. Horacle (in her

---

[68]        Defendant's Statement of Undisputed Facts at ¶ 20.

[69]        Id. at ¶ 21.

[70]        See Complaint at ¶ 18; Answer with Affirmative Defenses at ¶ 18.

seventies) both worked in the Accounting department.[71]  None of those three employees reported to Mr. Donovan (plaintiff's supervisor).[72]  However, Mr. Donovan did lay off five or six other people (including plaintiff) on July 19, 2010.[73]

### Plaintiff's Post-Termination Letter

On December 5, 2010, approximately four-and-a-half months after his position was terminated, plaintiff sent a letter to Audrey Schein, Vice President of Human Resources at AWI, in which plaintiff stated that "upon reflection, [he felt] that [his] age was the primary reason for termination of [his] employment."[74]

---

[71]     During plaintiff's deposition, he identified Janet Horackle as an accounting employee with AWI who was in her seventies and was "let go" at approximately the same time plaintiff's employment was terminated. (Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition, at pages 69-70.)  During Ms. Schein's deposition, she testified that Ms. Horackle as approximately seventy-nine years old and that her position was not eliminated but rather that Ms. Horackle retired.  (Plaintiff's Reply in Opposition, Exhibit C, Schein Deposition, at page 66.)

(It is not clear whether her last name is spelled "Horackle", as in plaintiff's deposition, or "Harakel", as in Ms. Schein's deposition).

[72]     Plaintiff's Reply in Opposition, Exhibit A, pages 69-70.

[73]     Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition, at page 48.

[74]     Specifically, the body of plaintiff's letter to Ms. Schein states, in its entirety:

> As you are aware, I was terminated in July after fourteen (14) years of service at AWI.  During that time, I considered myself a dedicated and conscientious employee.
>
> However, upon reflection, I feel that my age was the primary reason for termination of my employment.  I am now bringing my concerns to your attention.  Can you share with me your thoughts concerning this matter?

(<u>Footnote 74 continued</u>):

Plaintiff's December 5, 2010 letter to AWI's Human Resources Department does not indicate why plaintiff came to the conclusion that his age was the primary reason for the termination of his employment.[75]  However, as explained during the deposition of plaintiff by defendant in this matter, plaintiff stated that there were three reasons that he came to believe he was fired because of his age.

First, AWI posted an advertisement for a director-level position within the Center Store division despite the purported need to cut costs by five percent within each division.[76]

Second, Mr. Kreitz (the Category Manager in his mid-thirties who plaintiff trained in early 2010) was treated with respect by Mr. Donovan and was not subjected to the "nitpicking" by Mr. Donovan to which plaintiff was subjected.[77]

---

(Continuation of footnote 74):

Defendant's Statement of Undisputed Facts, Exhibit L (Document 21-12), letter dated December 5, 2010 from plaintiff to Audrey Schein, Director of Human Resources at AWI.

[75]     See id.

[76]     Defendant's Statement of Undisputed Facts at ¶ 30a.

[77]     Id. at ¶ 30b.; Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition, at pages 83, 86 and 128.

     Specifically, during defendant's deposition of plaintiff John R. Martin, Esquire, counsel for defendant, asked plaintiff: "How was Dennis Kreitz treated more favorably than you?"  Plaintiff responded: "With respect. Nowhere did I see the nitpicking with Dennis Kreitz as it was with me."  (Id. at page 86.)

Third, Tom Miele, a sales employee in the Center Store division (non-director-level position) in his mid-thirties, was laid off in October 2010. However, in lieu of being let go, Mr. Miele first was offered a position at another AWI facility located in Pittsburgh, Pennsylvania, which he declined.[78]

## New Director-Level Position in Center Store

In April 2011 AWI created a new position within the Center Store division called Director of Center Store Category Management.[79]

The Director of Center Store Category Management does not share any of the duties previously performed by plaintiff as Director of Procurement and Private Brands.[80]

William Clarke, born December 2, 1950 (prior to plaintiff), was hired to fill the newly-created Director of Center Store Category Management position on April 8, 2011.[81] Mr. Clarke was 60 years old at the time he was hired to fill the new director-level position in AWI's Center Store division.[82]

---

[78]     Defendant's Statement of Undisputed Facts at ¶ 30c.; Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition, at page 87.

[79]     Defendant's Statement of Undisputed Material Facts at ¶ 37; see Plaintiff's Reply in Opposition, Exhibit C, Schein Deposition, at page 74.

[80]     Defendant's Statement of Undisputed Material Facts at ¶ 38; see Plaintiff's Reply in Opposition, Exhibit C, Schein Deposition, at page 74.

[81]     Defendant's Statement of Undisputed Material Facts at ¶ 39; see Plaintiff's Reply in Opposition, Exhibit C, Schein Deposition, at page 74.

[82]     Id.

Mr. Donovan made the decision to hire Mr. Clarke. Mr. Clarke was fired by Mr. Donovan after six or seven weeks in the position of Director of Category Management in the Center Store division.[83]

Mr. Donovan's uncontradicted deposition testimony is that, at the time he hired Mr. Clarke, Mr. Clarke indicated that he was in the process of closing down his failing hardware store in Myrtle Beach, South Carolina and wanted to get back into the grocery business, and that he fired Mr. Clarke because he was not, in fact, closing down his hardware business, but was, rather, attending to that business while working for AWI and failing in his duties as Director of Category Management.[84]

## DISCUSSION

As described above, plaintiff Dennis O'Connell alleges that his employment as Director of Procurement and Private Brands with defendant Associate Wholesalers, Inc. was terminated in violation of the ADEA and the PHRA.

In the within Motion, defendant AWI seeks summary judgment in its favor on plaintiff's age discrimination claim and, in support of its motion, contends that plaintiff has not established his prima facie case and, alternatively, that

---

[83]     Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition, at page 140.

[84]     Id. at page 141.

plaintiff has not provided sufficient record evidence to permit a reasonable factfinder to conclude that defendant's proffered reason for firing plaintiff was pretextual.

Plaintiff opposes defendant's Motion on both grounds. Plaintiff contends that summary judgment should not be entered in favor of defendant because plaintiff's record evidence establishes a prima facie case of age discrimination and would permit a reasonable factfinder to conclude that defendant's proffered reason for firing plaintiff was pretextual.

Under the ADEA, "an employer is prohibited from discharging an individual...because of such individual's age." Anderson v. Consolidated Rail Corporation, 297 F.3d 242, 249-250 (3d Cir. 2002)(citing 29 U.S.C. § 623(a)(1)).

The burden shifting framework established by McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny applies to age discrimination claims under the ADEA and the PHRA where, as here, such claims are based upon indirect and circumstantial evidence. See Tomasso v. The Boeing Company, 445 F.3d 702, 705 (3d Cir. 2006); Monaco v. American General Assurance Company, 359 F.3d 296, 300 (3d Cir. 2004).

### Prima Facie Case

The United States Court of Appeals for the Third Circuit has stated that, ordinarily, to make out a prima facie

case under <u>McDonnell Douglas</u>, the plaintiff must show that he was (1) at least 40 years old, (2) fired, (3) qualified for the job from which he was fired, and (4) replaced by a sufficiently younger person to create an inference of age discrimination. <u>Tomasso</u>, 445 F.3d at 706 n.4 (quoting <u>Fakete v. Aetna, Inc.</u>, 308 F.3d 335, 338 (3d Cir. 2002))(internal quotations omitted).

For purposes of Defendant's Motion for Summary Judgment, the parties agree that the first three requirements of plaintiff's prima facie case are satisfied:[85] plaintiff was 58[86] years old at the time he was fired; he was qualified for his position in that he had worked in the grocery industry since the 1970s, for defendant since 1996, and for more than two years in the position he held at the time he was fired; and he was subject to an adverse employment action in that his position, Director of Procurement and Private Brands, was eliminated and his employment terminated on July 19, 2010.

---

[85] Plaintiff's Brief at page 14; Defendant's Brief at page 15.

[86] Plaintiff's Brief asserts that he was 59 years old at the time he was fired. However, it is undisputed that plaintiff was born November 1, 1951 and was terminated from his employment on July 19, 2010. Accordingly, it is undisputed that plaintiff was 58 at the time he was fired. Plaintiff celebrated his 59th birthday on November 1, 2010.

Accordingly, the material issue becomes whether plaintiff's record evidence would support the conclusion that he also satisfied the fourth prong of his prima facie case.[87]

The United States Court of Appeals for the Third Circuit has explained that "[i]n the context of a reduction in force, in order to satisfy the fourth element of a prima facie case under the ADEA, a plaintiff must show that the employer retained a sufficiently younger similarly situated employee." Monaco, 359 F.3d at 301 (citing Anderson v. Consolidated Rail Corporation, 297 F.3d 242, 249-250 (3d Cir. 2002)).[88]

_____

[87]    Plaintiff interprets Defendant's Brief as taking the position that plaintiff must demonstrate that he was "replaced" in order to establish a prima facie case of age discrimination.  (See Plaintiff's Brief at pages 14-15.)

        Plaintiff responds by arguing that such a position ignores the possibility that plaintiff can satisfy the fourth requirement by demonstrating that he was terminated "under circumstances creating an inference of discriminatory motive", and by noting that "[i]f replacement were strictly required, there could never be an age discrimination suit based upon corporate 'downsizing' or circumstances where there have been layoffs.  Clearly, this is not the state of the law."  (Id.)

        Plaintiff's argument attacks a straw man.  While plaintiff is correct in asserting that replacement of plaintiff by a sufficiently younger employee is not strictly required to establish a prima facie case of age discrimination, and that the state of the law does not forbid age discrimination claims arising from corporate downsizing of layoffs, defendant does not actually advance either of those propositions in support of Defendant's Motion for Summary Judgment.  (See Defendant's Brief at pages 14-18.)  Rather, defendant argues, based upon reduction in force caselaw, that plaintiff fails to establish his prima facie case because he has not produced record evidence that AWI retained a "sufficiently younger, similarly situated employee to permit an inference of age discrimination" or that plaintiff's duties were subsequently reassigned to sufficiently younger AWI employees.  (See id.)

[88]    A "work force reduction", or a reduction in force, situation arises when "business considerations cause an employer to eliminate one or

                                        (Footnote 88 continued):

more positions within the same company."  Smith v. Thomas Jefferson University, 2006 U.S.Dist. LEXIS 45079, at *9 n.2 (E.D.Pa. June 29, 2006) (Padova, J.)(quoting Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir. 1990)).

The record here demonstrates that the within matter involves a reduction in force situation.  Specifically, it is undisputed that AWI's executive management instructed division heads, including plaintiff's supervisor, Mr. Donovan, to reduce the division's expenses by five percent. It is also undisputed that, after that instruction was issued, Mr. Donovan decided to, and did, terminate the employment of plaintiff and several other employees in AWI's Center Store division, which he led.

In his brief, plaintiff states that "AWI has attempted to present this case as one of a 'reduction in force' (RIF) or a restructuring as its alleged legitimate non-discriminatory reason." (Plaintiff's Brief at page 15.)  Notably, plaintiff does not expressly state that this case does not involve a reduction in force, nor does he cite to record evidence demonstrating that AWI's workforce remained the same size, or grew, during the period of time surrounding plaintiff's termination.  (See id.)

Indeed, exhibits filed by plaintiff in opposition to summary judgment -- specifically, Plaintiff's Exhibit B, Donovan Deposition, Exhibit Donovan 3 and Exhibit Donovan 5 -- and relied upon in his brief, (see Plaintiff's Brief at pages 18-20), demonstrate that while forty-three people were hired at AWI's Robesonia, Pennsylvania facility between July 2009 and December 2010 (a fact stressed by plaintiff), employment for seventy-five people at the facility terminated during that same period -- resulting in a net reduction of thirty-two positions at AWI's Robesonia facility.  (See Plaintiff's Exhibit B, Donovan Deposition, Exhibit Donovan 3 and Exhibit Donovan 5.)

In short, despite plaintiff's passing suggestion that this case may not involve a reduction in force, the undisputed facts and plaintiff's own record evidence bely that suggestion.  Accordingly, the within Opinion analyses this matter as a reduction-in-force situation.

Nonetheless, the Third Circuit Appeals Court has stated that

> even in a genuine RIF (one that is motivated on a programmatic level by economic concerns), individuals may be selected for layoff on the basis of age.  For this reason, even in a RIF, we use the McDonnell-Douglas framework to expose such discrimination.  The employer must have age-neutral reasons for deciding to lay off certain employees, and the employees may challenge these reasons as pretextual.

Tomasso, 445 F.3d at 707 (citing Showalter v. University of Pittsburgh Medical Center, 190 F.3d 231, 236-238 (3d Cir. 1999)).

If the comparator or replacement employee identified by plaintiff is "insignificantly younger" than the plaintiff, the court cannot infer unlawful age discrimination and the plaintiff fails to establish his prima facie case.  Monaco, 359 F.3d at 307 (quoting O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)).  While there is no particular age discrepancy that must be shown in order to permit an inference of unlawful age discrimination, the Third Circuit Appeals Court has noted that "a five year difference can be sufficient" but a two or three year differential "does not satisfy the sufficiently younger standard."  Id.

In addition to being sufficiently younger, the retained employees to whom plaintiff points must also be "similarly situated".  Id. at 305. [89]

If a plaintiff seeks to compare himself to retained employees who held other jobs (positions other than the plaintiff's position) for which the plaintiff was also qualified, the plaintiff must also demonstrate that inter-position shuffling of employees was the norm for the employer.

---

[89]       In Anderson, the Third Circuit Appeals Court explained the similarly-situated requirement by noting that the "ADEA is not a bumping statute".  Anderson, 297 F.3d at 250.  In other words, "the ADEA does not require an employer to discharge a younger employee so that an employee in the ADEA protected class can be retained." Anderson, 297 F.3d at 249 (quoting Earley v. Champion International Corporation, 907 F.2d 1077, 1083 (11th Cir. 1990)).

<u>Anderson</u>, 297 F.3d at 250.[90]  "[M]erely because a plaintiff has
met the standards for a particular position...does not mean that
the plaintiff and the person who occupied that position were
similarly situated for purposes of a prima facie age
discrimination claim."  <u>Monaco</u>, 359 F.3d at 306 (quoting
<u>Anderson v. Consolidated Rail Corpoation</u>, 2000 WL 1201534, at *5
(E.D.Pa. August 9, 2000)(Bartle, J.)).[91]

In order to determine whether an identified employee
might qualify as similarly situated to a plaintiff, the court
"must look to the job function, level of supervisory
responsibility and salary, as well as other factors relevant to
the particular workplace."  <u>Monaco</u>, 359 F.3d at 305.  This is "a
fact-intensive inquiry" to be conducted on a "case-by-case basis
rather than a in a mechanistic and inflexible manner."  <u>Id.</u>

---

[90]      In other words, if an employee holds the same position as five
co-workers within a department and that employee is then internally promoted
to manage that department, that now-manager is qualified for the positions
held by his former-coworkers, but his former coworkers (his now-subordinates)
are not similarly situated comparators unless there is evidence that the
shuffling of the position of manager or supervisor for that department among
the department's employees is the norm.  <u>See</u> <u>Anderson</u>, 297 F.3d at 250.

[91]      To the extent that plaintiff contends that Mr. Donovan should
have offered him a Category Manager position (even at a reduced salary) and
terminated one of the current category managers, such a "bumping" argument
has been rejected by the Third Circuit Appeals Court.  <u>See</u> <u>Monaco</u>, 359 F.3d
at 306.)

          Moreover, plaintiff's record evidence does not suggest that, as
Director of Procurement and Private Brands, he was similarly situated to the
Category Managers in AWI's Center Store division.  Indeed, such an argument
is belied by plaintiff's own argument with respect to the <u>additional</u> Category
Manager duties he was assigned by Mr. Donovan following Mr. Coladonato's
resignation and prior to the hiring of Mr. Kreitz.

(citing <u>Pivirotto v. Innovative Systems, Inc.</u>, 191 F.3d 344, 357 (3d Cir. 1999)).

In the <u>Monaco</u> case, plaintiff Robert Monaco had been employed by defendant American General Assurance Company in several positions during his two-plus decades with the company. 359 F.3d at 297. His position at the time he was laid off (as part of a company-wide reduction in force) was Vice President for the Eastern Region. Robert Shaw was Vice President for the Western Region. Mr. Monaco and Mr. Shaw had identical responsibilities within their respective territories. Following Mr. Monaco's termination, Mr. Shaw "assumed the day-to-day management of the Eastern Regional sales office". <u>Monaco</u>, 359 F.3d at 298.

The Third Circuit concluded that "there is no doubt but that Monaco and Shaw were similarly situated as they had the same job responsibilities, though for different regions" and Mr. Monaco, in that case, did not contend otherwise. <u>Id.</u> at 305-306. However, Mr. Monaco sought to have the district court and the Third Circuit "read the similarly situated requirement more broadly and to consider the eight sales vice presidents/branch managers who he directly supervised to be similarly situated." <u>Id.</u> at 306. Both courts rejected Mr. Monaco's request and declined to find Mr. Monaco's subordinates to be similarly situated employees. <u>Id.</u>

-34-

Here, unlike in _Monaco_, the position held by plaintiff at the time he was laid off was not held by anyone else at AWI. In other words, plaintiff does not contend (and the record evidence does not suggest) that plaintiff was the Director of Procurement and Private Brands for some (but not all) products sold by AWI and some other, sufficiently younger employee also held that position for different products, and was retained as Director of Procurement and Private Brands products outside plaintiff's portfolio of responsibilities when plaintiff was laid off.

To the extent that plaintiff contends that Dennis Kreitz is a similarly situated employee who was retained by Mr. Donovan, that argument is unavailing. Mr. Kreitz salary was $65,000 per year. At the time he was laid off, plaintiff was earning $95,000 per year.[92] Moreover, plaintiff (as a director) occupied a higher level on AWI's organizational chart than did Mr. Kreitz (as a manager).[93]

In an apparent effort to demonstrate that plaintiff and Mr. Kreitz were similarly situated, plaintiff contends that he trained Mr. Kreitz on how to perform the duties of a Category

---

[92] Plaintiff's Reply in Opposition, Exhibit C, Schein Deposition at page 22; Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition, at page 104.

[93] See Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition, at page 15.

Manager after Mr. Kreitz was hired into that position on

January 11, 2010.[94]   Plaintiff also notes that Mr. Donovan

"testified that [Mr.] Kreitz and [Mr.] O'Connell 'both had

similar responsibilities in limited areas around Private

Label.'"[95]

Review of Mr. Donovan's deposition testimony, from

which plaintiff quotes, does not support the conclusion that

Mr. Kreitz and plaintiff were similarly situated employees at

AWI.[96]

---

[94]      See Plaintiff's Brief at page 20.

[95]      Id. (quoting Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition, at page 37.)

[96]      The quote from Mr. Donovan's deposition testimony concerning the similar responsibilities purportedly shared by Mr. Kreitz and plaintiff appears within a discussion in which plaintiff's counsel, Jeffrey R. Elliot, Esquire, is questioning Mr. Donovan about Mr. Kreitz employment with AWI.

[Attorney Elliot:]  [W]hat was the position he held at AWI?

[Mr. Donovan:]  Category Manager.

[Attorney Elliot:]  What was, if any, Mr. Kreitz's role in assuming any of the duties and responsibilities that Mr. O'Connell was performing as of July 18, 2010?  Did you follow that question?

[Mr. Donovan:]  No.

[Attorney Elliot asks the stenographer to read the question back to Mr. Donovan.  The stenographer does so.]

[Attorney Elliot:]  Did you follow it that time?

[Mr. Donovan:]  Yes.

[Attorney Elliot:]  You may answer it.

[Mr. Donovan:]  He had no role.

(Footnote 96 continued):

[Attorney Elliot:]  So Mr. Kreitz was not performing any duties or responsibilities that Mr. O'Connell had been performing as of the day before Mr. O'Connell's termination date?

[Mr. Donovan:]  They both had similar responsibilities in limited areas around Private Label.

[Attorney Elliot:]  Now, after Mr. O'Connell's termination, which was the next day, July 19th, 2010, what, if any, of the duties and responsibilities that Mr. O'Connell had been performing did Mr. Kreitz assume, if any?

[Mr. Donovan:]  None.  He got no new work.

                              *   *   *

[Attorney Elliot:]  [T]here are many employees at AWI who hold the position of Category Manager.  Am I correct?

[Mr. Donovan:]  Yes.

[Attorney Elliot:]  How many?

[Mr. Donovan:]  In Center Store there are 11.

[Attorney Elliot:]  The 11 Category Managers are distinguished how?

[Mr. Donovan:]  By the product lines they are responsible for.

[Attorney Elliot:]  What was [Mr.] Kreitz's product line when he held the position of Category Manager?

[Mr. Donovan:]  Snacks and beverages.

[Attorney Elliot:]  Give me a couple of examples of other product lines that other Cat[egory] Managers held?

[Mr. Donovan:]  Detergents and paper towels, pet food, dairy, frozen food.

[Attorney Elliot:]  Do Cat[egory] Managers interact with the individual holding the position that Mr. O'Connell had held?

[Mr. Donovan:]  Yes, occasionally.

[Attorney Elliot:]  And describe that for me.  How would they, as you understand the business, interact with or have occasion to deal with Mr. O'Connell when he was employed by AWI?

(Footnote 96 continued):

In short, although Mr. Kreitz is sufficiently younger than plaintiff, Mr. Kreitz (as one of the eleven Category Managers in the Center Store division) was not similarly situated to plaintiff (the Director of Procurement and Private Brands).

Similarly, to the extent that plaintiff contends that Thomas Laraia is a similarly situated employee who was retained by Mr. Donovan, that argument is also unavailing. Mr. Laraia was born October 9, 1969 and was hired (at age 40) by Mr. Donovan on May 17, 2010 to become the Director of Field

---

(Continuation of footnote 96):

> [Mr. Donovan:] There would be discussions about trying to generate promotions on a particular Private Label item. They [(the Category Manager)] would work with the Director of [Procurement and] Private Label on that. Possibly, if there was an item that our Private Label suppliers should develop that they don't carry under the private Label at the time, there would be discussion there.
>
> If there were supplier issues, that a Private Label supplier was not performing well, either cutting merchandise, delivering late, they may approach the Director of [Procurement and] Private Label on that.

Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition, at pages 37-40.

When the quote from Mr. Donovan selected by plaintiff is viewed within the context of the line of questioning in which Mr. Donovan actually made the statement that plaintiff and Mr. Kreitz "both had similar responsibilities in limited areas around Private Label", the quote is sapped of its force as support for the proposition that plaintiff and Mr. Kreitz were similarly situated employees.

Mr. Donovan's deposition testimony would certainly permit a reasonable factfinder to conclude that Mr. Kreitz (as Category Manager for snacks and beverages) and plaintiff (as Director and Procurement and Private Brands) would each have responsibilities with respect to private label potato chips and private label soda, for example, sold by AWI. However, that is not the same thing as permitting the conclusion that plaintiff and Mr. Kreitz were similarly situated employees.

Operations at AWI.[97]  Mr. Laraia earned approximately $75,000 per year.[98]  Although Mr. Laraia's director-level position would have placed him at the same level as plaintiff on AWI's organizational chart,[99] plaintiff does not explain how (or supply record evidence suggesting that) the Director of Procurement and Private Brands shared job responsibilities with the Director of Field Operations such that plaintiff and Mr. Laraia were similarly situated for purposes of a prima facie case of age discrimination.

As discussed above, the undisputed facts and record evidence do not demonstrate that a sufficiently younger, similarly situated employee of AWI was retained so as to satisfy the fourth requirement of plaintiff's prima facie case of age discrimination.

Nonetheless, if a plaintiff cannot identify another similarly situated employee because the plaintiff held a "unique position" within the employer's organization, the employee plaintiff may satisfy the fourth element of the prima facie case "by demonstrating that the remaining responsibilities of [his] position were transferred to persons outside the protected

[97]      Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition, at Exhibit Donovan 3.

[98]      Plaintiff's Reply in Opposition, Exhibit C, Schein Deposition, at pages 5-6.

[99]      See Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition, at page 15.

class." <u>Carlson v. Youth Services Agency</u>, 2008 U.S.Dist.
LEXIS 83477, at *8-9(M.D.Pa. October 20, 2008)(Munley, J.)
(quoting <u>Smith v. Thomas Jefferson University</u>, 2006 U.S.Dist.
LEXIS 45079, at *10 (E.D.Pa. June 29, 2006)(Padova, J.); <u>see</u>
<u>Torre v. Casio, Inc.</u>, 42 F.3d 825, 830-831 (3d Cir. 1994).

It is undisputed that plaintiff was the only employee
who held the position of Director of Procurement and Private
Brands in the Center Store division, or anywhere else within
AWI.

Plaintiff contends that "[t]he assignment of less
experienced and qualified employees outside of the protected
class to perform O'Connell's job functions and not even offering
a lower-paying position or opportunity to remain employed (an
opportunity afforded to certain younger employees)[100] raises [an]

---

[100]        The argument section of Plaintiff's Brief does not specify to
which employee plaintiff is referring.  (<u>See</u> Plaintiff's Brief at pages 14-
21.)  However, elsewhere in Plaintiff's Brief he identifies Tom Miele as
"another employee in his thirties...who had been offered another position in
the company in lieu of being terminated." (Plaintiff's Brief at page 10.)

Tom Miele, a sales employee in the Center Store division (non-
director-level position) in his mid-thirties, was fired in October, 2010.
However, in lieu of termination, Mr. Miele first was offered a position at
another AWI facility located in Pittsburgh, Pennsylvania, which he declined.

Plaintiff does not offer an explanation as to how (and the record
does not suggest that) plaintiff and Mr. Miele were similarly situated in
their respective positions in the Center Store division.   Moreover, as
explained above, the Third Circuit has expressly stated that the ADEA is not
a bumping statute requiring an employee to discharge a younger employee in
order to retain one within the ADEA's protected class.  Accordingly,
plaintiff's reference to Mr. Miele and plaintiff's allegation that Mr. Miele
was treated more favorably by AWI, in that Mr. Miele was offered an
alternative position in lieu of termination while plaintiff was not, does not
assist plaintiff in satisfying the fourth element of his prima facie case.

inference of discrimination."[101]  However, plaintiff does not

specify which younger employees were assigned to perform his job

functions.[102]  Indeed, plaintiff testified that he does not know

who received or assumed the duties and responsibilities that he

had performed as Director of Procurement and Private Brands

prior to being laid off.[103]

Nonetheless, one of plaintiff's responsibilities as

Director of Procurement and Private Brands was to direct the

efforts of the replenishment buying team.[104]  Mr. Donovan's

July 6, 2010 memorandum to Mr. Ellis concerning the

restructuring of the Center Store division states that

"replenishment oversight" would be moved to the Senior Buyers

going forward.[105]  Plaintiff does not expressly identify any

Senior Buyer as an employee to whom any of his duties as

---

[101]        Plaintiff's Brief at pages 20-21.

[102]        See Id.

        Plaintiff also asserts, earlier in his brief, that "an employee
with less seniority assumed many of his job functions." (Plaintiff's Brief
at page 17.)  Again, plaintiff does not identify that employee and, more
importantly, how old that employee was.  (See id.)  Moreover, "age and years
of service are analytically distinct...and thus it is incorrect to say that
a decision based on years of service is necessarily 'age based.'"  Tomasso,
445 F.3d at 710 n.8 (quoting Hazen Paper Company v. Biggins, 507 U.S. 604,
611, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993)).

[103]        Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition
at pages 78-79.

[104]        Defendant's Statement of Undisputed Facts at ¶ 6; see Plaintiff's
Reply in Opposition, Exhibit A, O'Connell Deposition, at pages 20-21.

[105]        Plaintiff's Reply in Opposition, Exhibit B, Donovan Deposition,
at Exhibit Donovan 2, page 1.

Director of Procurement and Private Brands was assigned, nor, more importantly, does he identify (or provide record evidence suggesting) the age of any such Senior Buyer.

Accordingly, the record evidence would not permit a reasonable factfinder to conclude that plaintiff's replenishment oversight responsibilities were transferred to sufficiently younger Senior Buyers. Therefore, plaintiff cannot satisfy the fourth requirement of his prima facie case of age discrimination based upon the movement of replenishment oversight to Senior Buyers.

Plaintiff contends that the circumstances of his termination support an inference of age discrimination because he was laid off "after he had essentially trained a younger and less experienced employee (Kreitz) in his essential job functions."[106] Plaintiff testified that from the time Dennis Kreitz was hired in January 2010, until plaintiff was laid off in July 2010, plaintiff "was training Dennis Kreitz. Everything Dennis Kreitz was responsible for at the time of my termination came off my desk".[107]

As described in the "Facts" section above, for approximately three months following Mr. Coladonato's

---

[106]        Plaintiff's Brief at page 10.

[107]        Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition, at page 76, quoted in Plaintiff's Brief at page 9.

resignation, but prior to Mr. Kreitz being hired, plaintiff assumed, and performed, the duties of Category Manager with respect to soda, water, snacks, bottled juice, and aseptic juice products.[108] Then, in January 2010, when Mr. Kreitz was hired to fill Mr. Coladonato's former position, Mr. Donovan instructed plaintiff to train Mr. Kreitz concerning Mr. Kreitz's duties as a Category Manager. From the time that Mr. Kreitz was hired as Category Manager until plaintiff's termination on July 19, 2010, plaintiff trained Mr. Kreitz on the duties of a Category Manager.[109]

Although the Category Manager duties which plaintiff assumed from Mr. Coladonato were transferred subsequently from plaintiff to Mr. Kreitz (who is substantially younger than plaintiff), plaintiff does not argue, and the record does not demonstrate, that plaintiff's responsibility for training Mr. Kreitz or plaintiff's other responsibilities as Director of Procurement and Private Brands were reassigned to sufficiently younger employees. Accordingly, I conclude that plaintiff fails establish the fourth element of his prima facie case of age

---

[108]      See Plaintiff's Reply in Opposition, Exhibit A, O'Connell Deposition, at page 76; see also Defendant's Statement of Undisputed Facts at page 12 n.3.

[109]      Id.

discrimination on the basis duties for his unique position being reassigned to sufficiently younger employees who were retained.

Because, for the reasons expressed above, I conclude that plaintiff has not established a prima face case of age discrimination, I grant Defendant's Motion for Summary Judgment.

## Pretext

In the event that I were to conclude that plaintiff has established his prima facie case, defendant also seeks summary judgment in its favor on the ground that no reasonable factfinder could conclude that defendant's legitimate nondiscriminatory reason for laying plaintiff off was pretextual.[110] Although, for the reasons expressed above, I conclude that plaintiff has not established his prima facie case, I will nonetheless address defendant's alternative argument in support of summary judgment.

Assuming that plaintiff satisfied his initial burden and established a prima facie case of age discrimination, the burden would shift to defendant for defendant to articulate a legitimate nondiscriminatory rational for the layoff. Tomasso, 445 F.3d at 706 (citing Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

To carry this "relatively light" burden, defendant is required to produce record evidence "which, taken as true, would

---

[110]    Defendant's Brief at pages 18-21.

permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Id. (quoting Fuentes, 32 F.3d at 763).

Defendant has carried this burden. Specifically, defendant contends, and has supplied record evidence demonstrating, that AWI's executive leadership directed division heads (including Mr. Donovan) to reduce their expense budgets by five percent, and that the position of Director of Procurement and Private Brands was eliminated, and plaintiff laid off, as part of Mr. Donovan's restructuring of the Center Store division in response to the directive from AWI's executive leadership.[111]

More specifically, defendant contends, and has supplied record evidence that, if believed, demonstrates that Mr. Donovan elected to eliminate the position of Director of Procurement and Private Brands based upon his conclusion that eliminating that position would improve cohesion and accountability, and eliminate redundancies within Center Store.[112] Therefore, defendant has carried its burden of production under the McDonnell-Douglas framework.

Accordingly, the burden of production shifts back to plaintiff for him to "provide evidence from which a factfinder could reasonably infer that the employer's proffered reason is

---

[111]      Defendant's Statement of Undisputed Facts at ¶ 12.

[112]      Id. at ¶¶ 14-17.

merely a pretext for discrimination." <u>Burton</u>, 707 F.3d at 426
(citing <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764-765 (3d Cir.
1994)).  "The plaintiff must make this showing of pretext to
defeat a motion for summary judgment."  <u>Id.</u> at 426-427.

 To make the requisite showing of pretext, "the
plaintiff must point to some evidence, direct or circumstantial,
from which a factfinder could reasonably either (1) disbelieve
the employer's articulated legitimate reasons; or (2) believe
that an invidious discriminatory reason was more likely than not
a motivating or determinative cause of the employer's action."
<u>Burton</u>, 707 F.3d at 427 (quoting <u>Fuentes</u>, 32 F.3d at 764).

 If a plaintiff's purported evidence of pretext relates
to the credibility of the employer's proffered nondiscriminatory
reasons, such evidence "must demonstrate such weaknesses,
implausibilities, incoherencies, or contradictions...that a
reasonable factfinder could rationally find them unworthy of
credence."  <u>Burton</u>, 707 F.3d at 427 (quoting <u>Fuentes</u>, 32 F.3d
at 765).

 The facts contained in Defendant's Statement of
Undisputed Facts are deemed admitted for purposes of the motion
based upon plaintiff's failure to file a response to Defendant's
Statement of Undisputed Facts as required by my Rule 16 Status

Conference Order issued in the within matter.[113]  Accordingly,

the following facts are admitted for purposes of summary

judgment:

>10.  Plaintiff was terminated on July 19, 2010 as a result of the elimination of his position.
>
>11.  Plaintiff was not involved in the decision-making process that led to the elimination of his position, but he is aware that other employees were also terminated at or around the same time.
>
>12.  With the ongoing recession, the retail grocery industry had continued to suffer economic losses, which detrimentally affected AWI's business.  In the spring of 2010, it became apparent that AWI needed to restructure its operations, both to achieve cost savings and to realign itself to better meet the needs of its retail grocery store customers.  Accordingly, AWI executives directed the division vice presidents and directors to develop a strategy to cut five percent (5%) of the allotted budget for each division. Pursuant to this directive, each vice president and/or director reviewed his or her respective division and developed criteria for determining the parameters of the restructuring of his or her division.
>
>13.  Position duties within the divisions were realigned to achieve greater efficiencies, and cuts were made in the following divisions or departments: Center Store, the Distribution Center, Finance and Administration, Human Resources, the Meat Department, and Retail Development.  Each division head was required to justify any personnel cuts made.  In addition, cuts were made in areas other than personnel.  For example, mileage was reduced and fewer employees were allowed to attend conferences.
>
>14.  As it pertains to Center Store (i.e. Plaintiff's division), Bill Donovan reviewed the division structure and concluded that then-current structure created redundant and conflicting layers of authority. While [C]ategory [M]anagers were responsible for

---

[113]     See footnote 7, supra.

objectives relating to the products, private label management and the DeJarnett Account Manager, Jeanne Lowe, were responsible for the development, maintenance, and communication of programs. This led to a lack of cohesion and accountability, and eliminating the Director of Procurement and Private Brands position eliminated this problem.

15. The DeJarnett Account Manager (Jeanne Lowe) is an individual who works for AWI's private label broker, DeJarnett, and not for AWI. The DeJarnett Account Manager provides services to AWI, but is paid and controlled by the broker, not by AWI. Accordingly, it made sense for AWI to take advantage of the opportunities to cut costs offered by the presence of this individual, who is provided as a service by the broker at no cost to AWI.

16. In addition, the other duty of the Director of Procurement and Private Brands was oversight for replenishment of goods. Because demand in this area had remained static at best, there was no need for redundant management oversight in this area.

17. *Based on these considerations, Bill Donovan chose Plaintiff's position for elimination.*[114]

Based upon the admitted facts contained in Defendant's Statement of Undisputed Facts -- specifically the above-quoted facts and, most importantly, paragraph 17 above -- no reasonable factfinder could conclude that the legitimate nondiscriminatory reason provided by defendant for laying off plaintiff was mere pretext.

For the reasons described above, even if I were mistaken and plaintiff has sufficiently established a prima facie case of age discrimination based upon these facts, I grant

---

[114]      Defendant's Statement of Facts at ¶¶ 10-17 (emphasis added).

Defendant's Motion for Summary Judgment on the alternative
ground that no reasonable factfinder could find in plaintiff's
favor concerning pretext on the facts admitted here.

## CONCLUSION

For the reasons expressed above, I grant Defendant's
Motion for Summary Judgment.  Specifically, the Motion is
granted because plaintiff does not establish a prima facie case
of age discrimination and, alternatively, because the undisputed
material facts would not permit a reasonable factfinder to
conclude that defendant's proffered rationale for laying off
plaintiff is mere pretext.  Accordingly, judgment is entered in
favor of defendant Associated Wholesalers, Inc. and against
plaintiff Edward O'Connell on plaintiff's Complaint.